IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DG Gas, LLC, et al., | Case No. 1:24-cv-01002-PAB |
| Plaintiffs, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| TA Franchise Systems, LLC, et al. | |
| Defendants. | MEMORANDUM OPINION & ORDER |

Currently pending before the Court is Plaintiffs DG Gas, LLC, DG Cordelle, LLC, and DG Real Estate Partners, LLC's (collectively, "DG Gas") "Motion to Dismiss Defendants' Counterclaims." (Doc. No. 23.) On May 19, 2025, Defendant TA Franchise Systems LLC ("TA") filed its Opposition to the Motion to Dismiss, to which DG Gas replied on June 2, 2025. (Doc. Nos. 31, 32.) Also pending before the Court is TA's Motion for Leave to File Sur-Reply in Opposition to Plaintiffs' Motion to Dismiss Counterclaims (the "Motion for Leave"). (Doc. No. 33.) On June 30, 2025, DG Gas filed an Opposition (Doc. No. 35), and TA did not file a reply. For the following reasons, DG Gas' Motion to Dismiss is DENIED, and TA's Motion for Leave is DENIED as moot.

I.   **Allegations in the Counterclaims**

On December 6, 2021, DG Gas and TA entered into a franchise agreement for building and operating a TA Express Center in Cordele, Georgia (the "Franchise Agreement"). (Doc. No. 20, ¶ 9.) The Franchise Agreement had a 10-year term, with rights to renew for two additional five (5) year periods. (*Id.* at ¶ 10.) In the Franchise Agreement, DG Gas agreed to open a TA Express Center at the Cordele, Georgia site within 18 months following the date of the Franchise Agreement. (*Id.* at ¶ 11.) Under the terms of the Franchise Agreement, DG Gas agreed to pay TA certain Royalty

amounts, as defined, which included royalties on gross sales.  (*Id.* at ¶ 12.)

DG Gas and TA entered into an Addendum to Franchise Agreement, effective as of December 6, 2021.  (*Id.* at ¶ 14.)  In the Addendum to Franchise Agreement, DG Gas again agreed to the opening deadline—modifying this requirement slightly to require opening "within 18 months following … purchase of the Site…"  (*Id.* at ¶ 15.)  Because "[t]he purchase of the Cordele, Georgia Site closed on December 3, 2021," DG Gas agreed "that the TA Express Center in Cordele, Georgia would be opened by June 3, 2023."  (*Id.* at ¶¶ 16–17.)  Under the Franchise Agreement, TA had the right to terminate "without giving [DG Gas] any opportunity to cure the default…effective upon delivery" for failure to 'begin operating…within eighteen (18) months of the Agreement Date.'"  (*Id.* at ¶ 19 (quoting Franchise Agreement § 18.2(b)).)

DG Gas failed to open a TA Express Center in Cordele, Georgia by the June 3, 2023 opening deadline agreed to by the parties.  (*Id.* at ¶ 22.)  "[A]s of June 3, 2023," DG Gas "had even not broken ground on construction of TA Express Center in Cordele, Georgia, a step that is required far in advance of meeting the opening deadline."  (*Id.* at ¶ 23.)  On June 16, 2023, "TA issued a Notice of Default and Termination [letter] to DG Gas notifying it that the Franchise Agreement terminated immediately, pursuant to Section 18.2 of the FA, for 'material breach of Section 5.2 of the Franchise Agreement.'"  (*Id.* at ¶ 24.)

**II.  Procedural History**

On June 12, 2024, DG Gas filed its Complaint against TA and TA Operating LLC.  (Doc. No. 1.)  On July 8, 2024, TA and TA Operating LLC filed a Motion to Dismiss DG Gas' Complaint.  (Doc. No. 11.)  On March 14, 2025, this Court issued a Memorandum Opinion and Order granting in part and denying in part that Motion to Dismiss.  (Doc. No. 19.)  On March 28, 2025, TA filed its

2

Answer and asserted two Counterclaims against DG Gas: (1) a breach of contract claim related to DG Gas's failure "to open a TA Express Center at the Cordele, Georgia location by the agreed-upon opening deadline," and (2) a declaratory judgment claim seeking a declaratory judgment that "TA's termination of the Franchise Agreement was valid." (Doc. No. 20.)

On April 18, 2025, DG Gas filed its Motion to Dismiss. (Doc. No. 23.) On May 19, 2025, TA filed its Opposition to the Motion to Dismiss, to which DG Gas replied on June 2, 2025. (Doc. Nos. 31, 32.) Then on June 16, 2026, TA filed the Motion for Leave. (Doc. No. 33.) On June 30, 2025, DG Gas filed an Opposition to the Motion for Leave (Doc. No. 35). TA did not file a reply. Accordingly, DG Gas' Motion to Dismiss and TA's Motion for Leave are ripe for review.

### III.  Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)). For purposes of Rule 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate*

*Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly,* 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

IV. **Analysis**

    A. **The Court denies the Motion to Dismiss**

DG Gas' Motion to Dismiss is premised upon Section 21.6 of the Franchise Agreement:

> **21.6 Limitations of Claims. ANY AND ALL CLAIMS ARISING OUT OF THIS AGREEMENT OR THE RELATIONSHIP AMONG YOU AND US MUST BE MADE BY WRITTEN NOTICE TO THE OTHER PARTY WITHIN 1 YEAR FROM THE OCCURRENCE OF THE FACTS GIVING RISE TO SUCH CLAIM (REGARDLESS OF WHEN IT BECOMES KNOWN); EXCEPT FOR CLAIMS ARISING FROM: (A) UNDER-REPORTING OF GROSS SALES; (B) UNDER-PAYMENT OF AMOUNTS OWED TO US OR OUR AFFILIATES; (C) CLAIMS FOR INDEMNIFICATION; AND/OR (D) UNAUTHORIZED USE OF THE**

### MARKS. HOWEVER, THIS PROVISION DOES NOT LIMIT RIGHTS TO TERMINATE THIS AGREEMENT IN ANY WAY.

(Doc. No. 1-1, PageID #187.)[1] DG Gas asserts that under Ohio law "contractual claim limitations may shorten the applicable statute of limitations provided that the shorter period shall be a reasonable one." (Doc. No. 23, PageID #1183–84 (quotation omitted).) Citing to authority analyzing contractual provisions that shorten the applicable statute of limitations, DG Gas claims that "the parties' 'Limitations of Claims' provision is reasonable." (Doc. No. 23, PageID #1184.) It then asserts that it "(i) was required to open a TA Express Center in Cordele, Georgia by June 3, 2023 and (ii) failed to do so." (*Id.* at PageID #1185.) Thus, DG Gas claims, "should TA have desired to make a claim against DG Gas, it was required to do so by June 3, 2024—one year 'from the occurrence of the facts giving rise to' its Counterclaims for breach of contract and declaratory judgment." (*Id.*) And here, according to DG Gas, "TA failed to provide written notice of a claim or assert a claim before June 3, 2024." (*Id.*)

In its Opposition, TA argues that Section 21.6 does not shorten the applicable statute of limitations. (Doc. No. 31, PageID #1234.) It asserts that "[t]here is nothing in Section 21.6—or any other provision of the Franchise Agreement—that requires a lawsuit to be filed within one year." (*Id.* at PageID #1235.) According to TA, "Section 21.6, instead, instructs how to preserve a claim." (*Id.*) TA argues that the Counterclaims "do not affirmatively show that they are time barred by alleging or admitting that written notice was provided outside of one year." (*Id.*) TA asserts that "[b]oth counts of TA's Counterclaims are based on DG Gas's failure to meet the June 3, 2023 opening deadline and

---

[1] Although the Franchise Agreement is not attached to the Counterclaims, the Court may properly consider the Franchise Agreement when ruling on DG Gas' Motion to Dismiss. *See*, *e.g.*, *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein").

5

TA's subsequent termination of the Franchise Agreement," and therefore "the 'facts giving rise to' the Counterclaims could not have occurred any earlier than June 3, 2023." (*Id.* at PageID #1235–36.) Accordingly, TA argues that the Counterclaims demonstrate compliance with Section 21.6 because "[t]he Counterclaims allege that TA provided written notice to DG Gas on June 16, 2023 that the Franchise Agreement was terminated immediately due to DG Gas's 'material breach of Section 5.2 of the Franchise Agreement.'" (*Id.* at PageID #1236.)

In its Reply, DG Gas asserts that "TA's Counterclaims must be dismissed because TA has not alleged it satisfied the Franchise Agreement's condition precedent of providing timely notice of its claims under the Limitations of Claims Provision." (Doc. No. 32, PageID #1246–47.) According to DG Gas, "TA may generally plead that it satisfied the Franchise Agreement's conditions precedent. But TA has not even satisfied this modest standard, as nowhere in its Counterclaims does it allege it satisfied the condition precedent established by the Limitations of Claims Provision." (*Id.* at PageID #1247.) DG Gas also agrees with TA that TA had until June 3, 2024 to satisfy Section 21.6, but it claims that "TA did not issue any notice of claim within that time period." (*Id.* at PageID #1248.) It claims that the termination letter fails to satisfy Section 21.6 because "[w]ithout some announcement that the claimant is considering litigation, coupled with alleged facts and damages giving rise to the claim, there is no notice of a claim conveyed to the defendant." (*Id.* at PageID #1249.) This is because, under DG Gas' interpretation of Section 21.6, while TA may have sent a "Notice of Default and Termination" letter on June 16, 2023, "TA does not allege it ever issued the required "written notice" of a "claim" in the one-year window required by the Franchise Agreement." (*Id.*)

At their core, the parties' arguments center on whether the alleged June 16, 2023 letter satisfies Section 21.6. DG Gas implicitly concedes that the alleged June 16, 2023 letter would be

6

timely under Section 21.6. DG Gas asserts in the Motion to Dismiss that "should TA have desired to make a claim against DG Gas, it was required to do so by June 3, 2024—one year 'from the occurrence of the facts giving rise to' its Counterclaims for breach of contract and declaratory judgment." (Doc. No. 23, PageID #1185.) DG Gas, accordingly, does not dispute that the June 16, 2023 letter would have been timely under Section 21.6. DG Gas, however, contends that the June 16, 2023 letter does not satisfy Section 21.6's substantive requirements. Thus, the Court must analyze whether the alleged June 16, 2023 letter satisfies Section 21.6 substantive requirements.

As with any contractual term, the Court begins its analysis by reviewing the plain language of Section 21.6. *See*, *e.g.*, *City of St. Marys v. Auglaize Cnty.*, 875 N.E.2d 561, 567 (Ohio 2007); *Shifrin v. Forest City Enters., Inc.*, 597 N.E.2d 499, 501 (Ohio 1992); *Kelly v. Medical Life Ins. Co.*, 509 N.E.2d 411, 413 (Ohio 1987). Section 21.6 requires TA to provide "written notice" to DG Gas of "any and all claims arising out of" the Franchise Agreement or the parties' relationship "within 1 year from the occurrence of the facts giving rise to such claim."

TA alleges in the Counterclaims that "on June 16, 2023, TA issued a Notice of Default and Termination (sic) to DG Gas notifying it that the Franchise Agreement terminated immediately, pursuant to Section 18.2 of the FA, for 'material breach of Section 5.2 of the Franchise Agreement.'" (Doc. No. 20, ¶ 24.) The Court finds that this allegation is sufficient to give DG Gas notice of TA's claim. By notifying DG Gas that it was in material breach of Section 5.2, DG Gas would reasonably be on notice of a breach of contract claim against it. *See*, *e.g.*, *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 473 (6th Cir. 2013) (finding that "a breach of contract action accrues when the breach occurs or when the complaining party suffers actual damages as a result of the breach"); *Dudek v. Thomas & Thomas Attys. & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 839 (N.D. Ohio 2010)

("It is well-established that a cause of action for breach of contract accrues when the breach occurs").

DG Gas, however, asserts that this allegation is insufficient. It claims that "TA's termination letter only purports to provide 'written notice of termination of the Franchise Agreement.'" (Doc. No. 32, PageID #1249.) It argues that "[w]hile TA may have issued 'written notice' of its 'Notice of Default and Termination' letter on June 16, 2023, TA does not allege it ever issued the required 'written notice' of a 'claim.'" (*Id.*) DG Gas claims that "Ohio courts uniformly hold that a 'notice of claim' must—at a minimum—(i) announce an intent to pursue a claim and/or (ii) provide specifics concerning parties' claims(s) and damages." (Doc. No. 32, PageID #1248.)

The Court disagrees. The Court has not identified any authority that supports this claim or proposition of DG Gas. Indeed, none of the cases DG Gas cites for its novel proposition involve contractual notice provisions like Section 21.6 and instead involve notice requirements pursuant to statute or a court rule. In *Wade v. Lima Mem'l*, 28 N.E.3d 161, 164–67 (Ohio App. 3d Dist. 2015), the court addressed whether the plaintiff timely filed a medical malpractice claim pursuant to O.R.C. § 2305.114(b) (requiring a plaintiff who "is considering bringing an action" to notify the defendant). Likewise, *Wind v. Walgreen Co.*, No. 1:10-cv-94, 2011 U.S. Dist. LEXIS 154972, at *28–29 (S.D. Ohio June 22, 2011) involved whether a plaintiff gave timely notice of a workers' compensation retaliation claim under O.R.C. § 4123.90 (requiring an employee to give an employer "written notice of a claimed violation of" the statute). And *Coastal Excursions, Inc. v. Khoury*, No. 3:07CV2782, 2007 U.S. Dist. LEXIS 93133, at *2–6 (N.D. Ohio Dec. 19, 2007) addressed whether a plaintiff timely gave notice of a maritime claim under Rule F of the Supplemental Rules for Admiralty or Maritime Claims (requiring a claimant to file a petition within six months "after a claimant shall have given to or filed with such owner written notice of claim."). None of these cases involve Ohio

contract law and the applicable notice requirements at issue in those cases are distinguishable from the Section 21.6.[2]

The parties have not pointed the Court to any authority interpreting a notice provision like Section 21.6. In fact, the parties do not point the Court to any applicable authority defining what a "claim" is and the Franchise Agreement does not define "claim." A "claim" generally includes "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional." Black's Law Dictionary, *Claim* (12th ed. 2024). The termination letter that is attached to DG Gas' Complaint, which DG Gas contends the Court can consider when ruling on its Motion to Dismiss,[3] is an "assertion of an existing right." That letter provides in relevant part:

> This letter serves as a written notice of termination of the Franchise Agreement.
>
> Section 5.2 of the Franchise Agreement, as amended, required you to open the TA Express Center within eighteen (18) months after DG Cordele's purchase of the Site. DG Cordele purchased the Site on December 3, 2021. Thus, you were obligated to open the TA Express Center by June 3, 2023. (the "Opening Deadline"). You have failed to do so. Indeed, you have not begun construction of the TA Express Center or even gotten TA's approval of construction plans. ***Your failure to open TA Express Center by the Opening Deadline constitutes a material breach of Section 5.2 of the Franchise Agreement.***
>
> Pursuant to Section 18.2 of the Franchise Agreement, TA is hereby terminating the Franchise Agreement, effective immediately. You must comply with all post-termination obligations under the Franchise Agreement, including but not limited to the obligations set forth in Section 19 of the Franchise Agreement. ***Please note that you and the Guarantors will be responsible for any legal fees incurred by TA in enforcing its rights upon termination.***

---

[2] DG Gas' argument that this case is similar to *MRI Software LLC v. University of Minnesota Foundation – Dinnaken Housing LLC*, No. 1:24-cv-00485, 2024 U.S. Dist. LEXIS 108314, at *8-9 (N.D. Ohio June 18, 2024) is likewise inapposite. That case involved a contractual provision which shortened the applicable statute of limitation to one year, which contrasts with the notice provision contained in Section 21.6.

[3] DG Gas, citing this letter five times in its Reply, contends that "the Court may dismiss TA's Counterclaims as pleaded because the Counterclaims and the documents in the record readily show . . . that the Counterclaims are untimely." (Doc. No. 32, PageID #1251.) The Court agrees with DG Gas that it can consider this letter because it is in the record, is referenced in the Counterclaims, and is central to the claims contained therein. *Bassett*, 528 F.3d at 430.

> The contents of this notice and all actions or communications by TA are made without prejudice to TA. ***TA hereby reserves all of its rights and remedies under the Franchise Agreement and at law and in equity***. No prior or future course of action by TA shall constitute a waiver of its rights or remedies under the Franchise Agreement and at law and in equity, unless reduced to writing and signed by TA.

(Doc No. 1-7, PageID #832–33 (emphasis added).) As shown by bolded language above, TA provided written notice to DG Gas that (1) DG Gas was in breach of Section 5.2 of the Franchise Agreement; (2) that DG Gas was responsible for TA's legal fees "in enforcing its rights upon termination"; and (3) that TA reserved "all of its rights and remedies under the Franchise Agreement and at law and in equity." The Court finds that this letter provided DG Gas with written notice of TA's claims sufficient to satisfy Section 21.6's requirements.

For all these reasons, DG Gas' Motion to Dismiss is denied.[4]

### B. The Court denies the Motion for Leave as moot

As explained above, the Court was able to resolve DG Gas' Motion to Dismiss without considering the parties' arguments contained in the Motion for Leave, TA's proposed Surreply and DG Gas' Opposition to the Motion for Leave. Accordingly, the Court denies TA's Motion for Leave as moot.

### V. Conclusion

For the reasons set forth herein, DG Gas' Motion to Dismiss (Doc. No. 23) is DENIED, and TA's Motion for Leave (Doc. No. 33) is DENIED as moot.

---

[4] Because the Court finds that the Counterclaims plausibly allege compliance with Section 21.6, the Court declines to address TA's alternative arguments concerning the statute of limitations and recoupment. (Doc. No. 31, PageID #1239–43.)

10

**IT IS SO ORDERED.**

                                                  *s/Pamela A. Barker*
                                                  PAMELA A. BARKER
Date:  January 8, 2026                    U. S. DISTRICT JUDGE